UNITED STATES FEDERAL DISTRICT COURT
NORTHERN DISTRICT OF NEWYORK STATE

U.S. DISTRICT COURT - N.D. OF N.Y.

**FILED**

OCT 18 2007

AT_____O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

**YUSUF J. NURALDIN**, pro se, founder and President of "KALEIDOSCOPE" ("ZEBRA TEAM"), prosecutes this Civil Action on behalf of himself and on behalf of all other similarly situated ZEBRA TEAM member(s): ZEBRA TEAM associate(s): ANTHONY FARELLA, Sr., Police Officer and a Part-time Centro Employee, and FELICIA A. TOWSEND, a former full-time Bus Operator, et. al.,

DNH / GJD

                                        PLAINTIFF,

                                                          **CIVIL RIGHTS**
                                                          **ACTION #_____**

                    -Against-

                                                          **COMPLAINT AND**
                                                          **JURY TRIAL DEMAND**
                                        07 -CV- 1108

**THE CENTRAL NEW YORK ("CENTRO") REGIONAL TRANSPORTATION AUTHORITY DEFENDANTS.:**

- **ROBERT COLUCCI, JR** (Chairman Board of Directors);
- **BRIAN M. SCHULT** (Vice Chairman, Board of Directors);
- **WARREN FRANK** (Former C.E.O.)
- **JOE CALABRESE** (former C.E.O);
- **FRANK KOBLISKI** (Present C.E.O);
- **JOHN RENOCK** (Senior V. P. of Operations);
- **JOE DEGRAY** (V. P. of Operations);
- **STEVE SHARE** (V. P. of Finance);
- **RICHARD LEE** (V. P. of Human Resources),
- **GARY NORDHEIM** (Employee Relations Manager);
- **JACKIE MUSENGO** (Benefits Manager),
- **AUDREY TUCKER** (Light Duty Coordinator);
- **LEO WILLIAMS** (Lead Outside Supervisor);
- **DAVE MIX** (Supervisor);
- **DUKE BAILEY** (Supervisor);
- **ANGELA GHOLSTON** (Supervisor)
- **DARRYL VANDERPOOL** (Outside supervisor);
- **ELIZABETH UNISLAWSKI** (Personal secretary of Senior V. P. John Renock)
- **PATTY DISHAW** (Manager Service Development);
- **JOE SPERATO,** (Dispatch Supervisor)
- **CRAIG WILLIAMS** (Former Director of Human Resources);
- **TOM SHALLCROSS** (Former Manager of All CENTRO Supervisors);
- **MIKE JABLINSKI** (Former Employee Relations Manager);
- **CARL BAKER** (Former Employee Relations Manager)
- **SCOTT VANDERPOOL** (former Manager Supervisor)

- WAVERY FAISON (Security, and former Employee Relations Manager and Trainer);
- SHAWN McMANUS, Bus Operator (Former outside supervisor);
- ROBERT C. SPRAGUE, Jr. (Former Chief Administrative Officer);
- KATHY FULLER, (Supervisor of Regional Transportation Center (RTC)
- WARREN WOODRUFF (Manager of RTC);
- ANGELIC MASON (Supervisor), and
- DAVE KRIESAL (Former supervisor);
- LON LARGE (Dispatch supervisor).
- ED MUELLAR (the former Union Vice President that filed false, fraudulent, and misleading charges against Plaintiffs', et. al., and, thus, was rewarded by CENTRO with a Managerial position in Service Development);

DEFENDANTS.

-and against-

**CENTRO'S LAW FIRM:** FERRARA, FIORENZA, LARRISON, BARRETT & REITZ, P.C., VIA ATTORNEY(s), FRANK MILLER; CRAIG M. ATLAS; MILES LAWLOR, ET. AL.

DEFENDANTS.

-and against-

**AMALGAMATED TRANSIT UNION** (International and/or Local 580) A-F-L, C-I-O): WARREN GEORGE (International Union President); JOSEPH WELCH (International V.P.); CHUCK WATSON (Business Agent, Secretary Treasurer); JOHN CAMPBELL (former Union President); DORTHY HUNTER(former Union V.P., and President); MARY NEGUENT (former Union Secretary); AL PARKER (former Union V.P); BILL MONTROY (Union Representative for Bus Mechanics); HOMER DAVIS (former trial committee investigator); BONNIE KRELL (Union member); BOB FAIRCHILD (Union member); MIKE CONWAY (Union member); MARY JANE TORTORICI (former Union Board member); PERRY TARQUINO (retired member); ELLIOT ROUSE (retired Union member); CARLTON DERBY (Union member); TYRONE BURKE (former Centro Supervisor, now Union President); SCOTT HAMILTON (Union Board member); KENNETH ORR (former union trial committee); DANA McMAHON (Union trial committee); BILL MINER (Union trial committee); JEFF KELLER (Union trial committee); FRANK CHAPMAN (V.P.); JOHN ZIEMBA (former Union board member) and,

FINALLY, AGAINST EACH AND EVERY UNION MEMBER THAT *VIOLATED* FEDERAL LAWS WHEN SAID MEMBERS, SUPRA, VOTED (VIA INTENTIONAL FRAUD AND, VIA RACE DISCRIMINATION) TO EXPEL PLAINTIFF, A BLACK MAN (Forever) FROM THE UNION BECAUSE OF HIS LONG TERM MUTUAL AID, SUPPORT, ASSOCIATION, AND/OR SUCCESSFUL REPRESENTATION AND DEFENSE OF "ZEBRA TEAM" MEMBERS FROM CENTRO'S, AND/OR THE UNION'S, CONSTITUTIONALLY IMPERMISSABLE FRAUDULENT ACTS AND/OR FRAUDULENT EMPLOYMENT PRACTICES AGAINST THE PLAINTIFF, HIMSELF, AND/OR AGAINST THE PEOPLE OF THE STATE OF NEW YORK.

2

-and against-

**STEPHANIE A. MINER,** OF THE LAW FIRM OF BLITMAN & KING (UNION LOCAL 580'S LAWYERS)

DEFENDANTS.

-and against-

**N. Y. STATE WORKERS COMPENSATION BOARD ("WCB") MEMBERS AND EMPLOYEES: BOARD MEMBERS:** KARL A. HENRY; SCOTT C. FIRESTONE; AND CAROL G. McMANUS; AND (WCB) STATE EMPLOYEE(S), JUDGE BOHER; AND COURT STENOGRAPHER, VANESSA E. JACKSON; WCB ADMINISTRATOR MICHELE ZAJAC; AND WCB ATTORNEY, MICHAEL J. O'BRIEN

DEFENDANTS.

-and against-

**ATTORNEYS WOODS AND RICHMOND** (CENTRO'S "WCB" LAWYERS)

DEFENDANTS.

-and against-

**"PERMA"** CENTRO'S ("WCB") INSURANCE CARRIER (A/K/A PUBLIC EMPLOYERS RISK MANAGEMENT, UNDER THE LEADERSHIP OF C.E.O, "JOHN DOE" AND/OR "JANE DOE", AND THEIR AGENTS: JANE MOKAY, ET. AL.

DEFENDANTS.

-and against-

**"RMSCO"** CENTRO'S ("DISABILITY-NO-FAULT") INSURANCE CARRIER, ALL, UNDER THE LEADERSHIP OF C.E.O., "JOHN DOE" AND/OR "JANE DOE" AND THEIR AGENTS "JANE MILES" ET. AL.

DEFENDANTS.

-and against-

**N. Y. STATE UNEMPLOYMENT INSURANCE BOARD,** UNDER THE LEADERSHIP OF "JOHN DOE" and/or "JANE DOE" CHAIRPERSON AND THEIR INTAKE SPECIALIST "JOHN DOE," AND/OR CASE MANAGER SPECIALIST, Mr. DON LIVINGSTON.

DEFENDANTS.

-and against-

**ZURICH AMERICAN INSURANCE COMPANY,** UNDER THE LEADERSHIP OF "JOHN DOE" and/or "JANE DOE" C.E.O., AND/OR THEIR CLAIMS EXAMINER: ADOLFO S. HERNANDEZ.

DEFENDANTS.

## INTRODUCTION, JURISDICTION AND VENUE

By this federal civil rights complaint, Yusuf J. Nuraldin, ("Plaintiff"), seeks to vigorously prosecute each and every Defendant named herein (and "others" not yet named), so as to vindicate, once and for all, each and every guaranteed fundamental state and federal constitutional right that was denied to him, on-going, by Defendants. The decision to prosecute this civil rights action, at this time, came about only after this Plaintiff was unable (for many many years) to appreciate that he was being intentionally discriminated against by Defendants *until* he had lived through a series of incidents and was able to perceive the overall discriminatory pattern. The Defendants overall invidious discriminatory animus, class based, which was systematically practiced and ratified by the Defendants, against this Plaintiff, et. al., said recklessness or callous disregard of Plaintiff's 13th, 14th and 15th Amendment federal rights cannot today be tolerated in an ordered society. Should the Courts allow Defendants' unprovoked, pervasive, longstanding and widespread prejudice to continue based upon the inability of the Defendants [due to political pressure or "buddyism"] to dispense racial justice and equality in a fair and impartial manner, especially, against blacks and women, should this happen, then we might as well turn back the clock to one hundred and fifty (150) years ago and thus live our lives according to those laws then on the books. The laws then (and Defendants probably believe said laws still exist) can be found in the infamous Dred Scott Decision of 1857, wherein the question then before the nine Justices of the U.S. Supreme Court then was: "Whether in the eyes of the men who wrote the Constitution and the words, **"WE THE PEOPLE,"** were these words intended to include the African (Black) race? The answer then, as written by former Chief Justice Taney, was answered as follows:

> "We think they are not, and that they are not included and were not intended to be included. They had for more than a century before been regarded as beings of an inferior order, and altogether unfit to associate with the white race, either in social or political relation; and so far inferior that they had no rights which the white man was bound to respect and that the negro might justly and lawfully be reduced to slavery for his benefit . . . This opinion was at that time fixed and universal in the civilized portion of the white race. It was regarded as an axiom in morals as well as in politics, which no one thought of disputing, or supposed to be open to dispute; and men in every grade and position in society daily and habitually acted upon it in their private pursuits, as well as in matters of public concern, without doubting for a moment the correctness of this opinion (see, S. Ct. 19 How. 393-633).

4

The final conclusion then reached by the U.S. Supreme Court Justices, in 1857, was that African (Black) Americans then were *not* citizens of the United States of America and thus they had no legal rights. Thus, upon this courts review of all the facts and exhibits submitted herein and/or submitted hereafter, the court will find that all prerequisites to its federal jurisdiction to determine the issues will have been satisfied.

## JURISDICTION AND VENUE

1.  Jurisdiction is conferred upon this Court by 28 U.S.C. § § § § 1331; 1332(a) and (1); 1337; 1367(a); and, also see, Section 1391(b). This Court's federal Jurisdiction is further invoked pursuant to subject matter jurisdiction over Plaintiff's claimed violations of his rights, privileges and immunities under federal laws and, specifically, pursuant to federal law, to "have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other". Specifically, Plaintiff's rights under our United States Constitution Amendments: FIRST, FOURTH, FIFTH, EIGHTH, NINTH, THIRTEENTH & FOURTEENTH. And, not excluding, Plaintiff's federal constitutional and/or civil rights, where applicable, under 42 U.S.C. § § § 1981; 1985(2)(3) and 1986; and § 1988.

2.  Due to Defendants massive frauds herein which involve a voluminous amount of constitutionally impermissible (R.I.C.O-like) acts, this Court's federal Jurisdiction is being invoked in the hope that the statute of limitations period will be tolled (i.e., prior to October 18, 2001, date whereon Plaintiff became aware of his highly unlawful retaliatory and/or highly unlawful discharge), because the Defendants (i.e., the Union and CENTRO), *prior to said date*, supra, had fraudulently concealed facts respecting the accrual and/or merits of Plaintiff's claims herein of being arbitrarily and discriminatorily denied his opportunity to be promoted to a full-time bus operator after he, in the year 1993, via an EEOC complaint filed on behalf of another part-time bus operator, forced and/or caused Defendants then to create a full-time seniority sign-up list (whereon he then, and in "good faith" reliance of said sign-up list, became the third (3rd) part-time operator to sign-up for any and all full-time bus operator positions) thus, then doing away

with Defendants' then previous unlawful and/or highly discriminatory "word of mouth" full-time hiring policy and procedures .

3.  This Court has jurisdiction over this matter, again, since the amount in controversy exceeds $75,000, per Plaintiff exclusive of interest and costs and there is diversity of citizenship.

4.  This Court has personal jurisdiction over the parties in that the Defendants conduct systematic and continuous business within the State of New York

5.  Venue is proper in this Court since Defendants do business and may be found in the District within the meaning of 28 U.S.C § 1391(a)

### PLAINTIFF'S ALLEGATIONS

6.  Plaintiff hereby repeats and re-alleges all the foregoing and additionally claims violations of his federal constitutional right and/or civil rights under Article I, § 10 [Law impairing the Obligation of Contracts and, where applicable, ex post facto Law]; 29 U.S.C., § 206(d)(1); and/or see also, 29 C.F.R. § 1615, et. seq. and, Title I, of the Labor Management Recording Disclosure Act (LMRDA)

7.  From December 1991, until the present, and on-going, the Defendants, each acting, either, individually and/or collectively, with others, and/or acting or pretending to act under color of state law, in their official and/or unofficial capacity, and/or acting personally and/or under the direction of his/her superior(s), via an official policy and/or custom, and all conscious of or trying to influence the law, or endeavoring to obstruct or interfere with it, they all, with intent that conduct constituting a violation of state and federal law be performed, said Defendants then knowingly, intelligently, intentionally, deliberately, purposefully, maliciously, willfully, voluntarily, and in "bad faith" agreed with each other and with others to engage in and cause Plaintiff to be unlawfully retaliated against, via unlawful discrimination based upon his race, color, sex, gender, religion, and/or disability.

8.   Defendants CENTRO and the Unions unlawful discriminatory employment practices and/or fraudulent plans, supra, were so successful that said plans effectively cause Plaintiff to be denied a promotion, forever. Defendants planned the above federal violations, pursuant to the laws and/or the opinion of the 1857 Dred Scott Decision, surpa, with the hope that Plaintiff would ultimately resign and/or quit, upon him being unlawfully harassed, discriminated against, retaliated against and/or, alternately, being viciously and/or brutally assaulted (all of which was systematically done to him) by CENTRO's executives, managers, supervisors, bus operators, and/or bus mechanics, while in the employ of CENTRO.

9.   Defendants further agreed that they would, while acting together in an improper combination, agree to deny, and/or stultify, each and every fundamentally guaranteed federal constitutional right of the Plaintiff, as was enjoyed yesteryear and is still enjoyed today by white CENTRO employees whose personnel records, seniority, and/or driving records demonstrate that Defendants should not have (but did), via unlawful discrimination, arbitrarily promote, and/or retain, said highly questionable white employees (and not excluding, other non-white employees) over this Plaintiff.

10.   Defendants decision to participate in this massive fraud, against Plaintiff, all, was to insure that each and every Defendants participation in this private conspiracy would be maintained inorder that said constitutionally impermissible conduct could operate more effectively. The success of each Defendants fraud and/or conspiracy and overt acts in furtherance of this conspiracy, all, depended on Defendants individual and/or collective malice against Plaintiff.

11.   Defendants fraud, fraudulent concealment, conspiracy, and/or discriminatory conduct, motive and/or intent, all, was predicated on an invidious discriminatory animus, class based, against the Plaintiff because of his race (black), his color (Dark brown), sex (male), disability, and/or his associations, on and off the job, with both white and black employees (ZEBRA TEAM members) and, Plaintiff's willingness, ability, and/or courage to exercise his first amendment constitutional rights, to speak "truth to power" in matters of public concern and/or in matters involving, as here, unlawful discriminatory employment practices.

7

12.  That each and every Defendant herein knew and/or should have known of the wrongs then conspired to be done, against Plaintiff (and others) and having prior knowledge of how said unlawful acts and/or crimes would be committed, and having the power to prevent and/or aid in its prevention of same, neglected and/or refused to aid in it prevention; that Defendants Superiors failed to properly train each Defendant Agent and/or subordinate employee of Defendants.

13.  That Defendants failure to act, supra, was the result of their own obstructionist tactics and, that each and every Defendant knew or reasonably should have known that the action he or she took within his or her sphere of official responsibility would violate the constitutional rights of Plaintiff and, that each and every Defendant herein took said action with the malicious intention to cause a deprivation of Plaintiff's constitutional rights and injury to his person; that the Defendants conduct independent of his or her lawfulness or unlawfulness at state law, is sufficiently egregious as to be constitutionally tortuous.

14.  That each and every Defendants intentional fraud, cover-up, and/or conspiracy to cover-up, and/or to commit said fraud and/or fraudulent concealment, all, involved a preconceived plan agreed upon by the conspirators and/or corporate Defendants to accomplish a common goal, which was to silence, suppress, censor, and/or punish Plaintiff and/or his ZEBRA TEAM members for his and/or their speech (via the peaceful filing of employee grievances, all, founded on state and federal law) via each Defendants willful participation in joint activity through the use of the Defendants' most powerful and influential employee, and/or executive board member(s) in Defendants corporate and/or State's administrative community and, that each and/or every Defendant personally participated, authorized, directed advised, encouraged, ordered, sanctioned, condoned, approved, supervised, managed, executed, covered-up, suppressed, destroyed, hid, concealed, and/or ratified, such unlawful conduct herein.

8

PLAINTIFF'S "HIRING DATE" AT CENTRO, DEFENDANTS
INITIAL VIOLATION OF FEDERAL LAW 42 U.S.C. § 1981, AND
§ 1985(2)(3) AND THE UNLAWFUL DISCRIMINATION AND/OR
UNLAWFUL RETALIATION, FRAUD, AND FRAUDULENT
CONCEALMENT THAT FOLLOWED

15.   On or about December of 1991, Plaintiff was chosen for hire out of a pool of approximately
two hundred (200) applicants that had then previous thereto applied for the position of part-time
CENTRO Bus Operator. Several weeks after Plaintiff began his training as a part-time bus
operator (i.e., around December 20-24, 1991) he was summoned by Defendant Waverly Faison
(trainer) to meet with Defendant Craig Williams (CENTRO's then Director of Human Resources).

16.   At the above meeting Defendant Williams told Plaintiff, in the presence of Defendant Faison,
that  upon Plaintiff's then future receipt of a Commercial Drivers License ("CDL"), Plaintiff
would be transferred from CENTRO, to PEACE Inc., as a CALL-A-BUS Operator.

17.   Plaintiff then, upon hearing the above unexpected transfer revelation, supra, replied to the
above by stating that his application to the New York State Labor Department identified CENTRO
as being the employer whereat he had chosen to learn and work in the operation of large buses, not
PEACE Inc., whereat Bus Operators primarily learn and work in the operation of mini buses.

18.   Defendant Williams then told Plaintiff that he should seriously consider working for PEACE
because based upon his then refusal to transfer to a lesser paying job with PEACE Inc., CENTRO
would not guarantee him a promotion to full-time bus operator.

19.   On or about February 1992, at the conclusion of CENTRO's then thirteen (13) weeks of
training for his Commercial Drivers License ("CDL"), Plaintiff was awarded his CDL during
graduation ceremonies. Prior to taking to the road, however, and then having to draw lots in his
class of approximately twelve (12) individuals to determine each persons ultimate seniority
classification at CENTRO, Plaintiff then, ironically, selected the key straw which then pole
vaulted him into the number one (1) seniority position in/of his class of 1992 (Note: Plaintiff's
class then included the Defendant herein, Joe Degray, V.P. of Operations).

20.  The following year (in 1993) due to CENTRO's then long-term policy and procedure of unlawful "word of mouth" hiring, and then unbeknownst to Plaintiff, several of his classmates (excluding Plaintiff) were given the opportunity to train (with pay) for full-time bus operator positions and, all, were subsequently hired that year (and/or several years thereafter) as full time bus operators.

## PLAINTIFF'S UNLAWFUL TERMINATION

On or about October 18, 2001 (some six (6) years ago) the Defendant Frank Kobliski, via his then subordinate Mike Jablinski, committed intentional fraud and sheer fraudulent concealment when he then unlawfully terminated Plaintiff via Defendant CENTRO's and/or Defendant "WCB's" misrepresentation a material fact that was then relied on by this Plaintiff until Defendant Rick Lee, subsequently, thereafter, in his letter dated October 23, 2001, then admitted to CENTRO's then previous frauds and fraudulent concealment.

This complaint to be amended in the near future.

I, Yusuf J. Nuraldin, do hereby certify, under penalty of perjury, under the laws of the Constitution of these United States of America, that all the foregoing is true and correct, based upon my own personal knowledge and/or based upon information and belief and a belief I believe to be true

Dated.:  October 18, 2007

Yusuf J. Nuraldi, pro se,
P.O. Box 151,
Liverpool, New York, 13088

(315-876-1335)